**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

---------------------------------------------------------------------------------- X
            :

KTJ DENTAL LAB COMPANY LIMITED    :

                     Plaintiff,  :

                        :  Civil Action No.

        -against-          :

                        :

CADMUS DENTAL LAB, INC.,    :

                        :

                        :

Defendant.             X

----------------------------------------------------------------------------------

## COMPLAINT

COMES NOW, Plaintiff, KTJ Dental Lab Company Limited ("KTJ" or "Plaintiff"), by and through its undersigned counsel and files this complaint against Cadmus Dental Lab, Inc. ("Cadmus" or "Defendant"), and alleges as follows:

### Nature of the Action

1. KTJ brings this action for breach of contract, account stated, open account, and under Florida Uniform Commercial Codes sections 672.709 and 672.207, and the United Nations Convention on Contracts for the International Sale of Goods to recover from Cadmus $5,403,948.45 plus interest thereon for dental products sold and delivered to Cadmus pursuant to purchase orders issued by

Cadmus to KTJ and reflected on invoices issued by KTJ which were received by Cadmus without objection.

## Parties

2.      Plaintiff KTJ is a limited liability company incorporated in Hong Kong, People's Republic of China, with its principal place of business at Room 705, 7/F, OfficePlus @Prince Edward, 794-802 Nathan Road, Kowloon, Hong Kong.

3.      Defendant Cadmus is an entity incorporated in the State of Delaware with its principal place of business located at 5701 E. Hillsborough Ave, Suite 2020, Tampa, Florida 33610.  Prior to its conversion to a Delaware corporation on or about September 20, 2022, Cadmus was incorporated in the State of Florida on or about January 13, 2022.

## Jurisdiction and Venue

4.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §1332 because this is an action between citizens of different states where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a) and (b) because the Defendant resides, and/or maintains its principal place of business, in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, respectively.

## GENERAL ALLEGATIONS

6.       KTJ is in the business of design, manufacture, distribution, and sale of dental products.

7.       Cadmus is a distributor of dental products.

8.       KTJ started selling dental products to Cadmus starting in 2022.  In December 2023, the Plaintiff and Defendant entered into a written agreement (the "Sales Agreement") pursuant to which KTJ sold dental products to the Defendant. **(Exhibit A).**

9.       Pursuant to the Sales Agreement, Cadmus ordered dental products (the "Products") from KTJ.

10.       In Accordance with Section II of the Sales Agreement, Cadmus placed orders with KTJ by transmitting to KTJ the applicable order information together with either: (a) digital intraoral scan data; or (b) physical dental models for model-based cases.

11.       Upon receipt of the applicable order information and digital scan data or physical models, KTJ commenced the design and manufacturing process for the ordered Products.

12.       In fulfilling an order, KTJ communicated with Cadmus directly if there were questions, issues, or clarifications which arose during the production.

13.     After production was completed, KTJ shipped the finished Products in accordance with the Sales Agreement and Cadmus' instructions to the destinations designated by Cadmus, in a timely fashion and without incident.

14.     Cadmus received and accepted the Products without complaint or objection.

15.     KTJ generated, delivered, and issued invoices to Cadmus for the produced and shipped Products.

16.     Pursuant to Section III (4) of the Sales Agreement, entitled *Reconciliation and settlement*, KTJ sent invoices by the 10th of the following month, requiring Cadmus to confirm by the 20th, and specifying that silence by the Cadmus upon receipt of the invoice would be understood as Cadmus having no objection to said invoice.

17.     The Sales Agreement required that payment be made within the month following Defendant's receipt of the invoice.

<u>Payment Outstanding</u>

18.     Attached hereto as **Exhibit B** is an itemized summary and copy of the unpaid invoices issued by KTJ to the Defendant ("Invoices").

19.     The Invoices generated, delivered, and issued by KTJ to the Defendant which are either wholly or partially unpaid, are as follows:

a. Invoice No. 20240831 dated September 5, 2024, in the sum of $ 787,651.25, has an unpaid balance of $ 818.20;

b. Invoice No. 20240930 dated October 5, 2024, in the sum of $659,467.02, has an unpaid balance of $ 659,467.02;

c. Invoice No. 20241031 dated November 26, 2024, in the sum of $715,545.87, has an unpaid balance of $715,545.87;

d. Invoice No. 20241130 dated December 2, 2024, which was later adjusted on January 4, 2025, to the sum of $700,080.29, has an unpaid balance of $700,080.29;

e. Invoice No. 20241231 dated January 3, 2025, in the sum of $476,387.05, has an unpaid balance of $476,387.05;

f. Invoice No. 20250131 dated February 7, 2025, which was later adjusted on April 2, 2025, to the sum of $367,024.48, has an unpaid balance of $367,024.48;

g. Invoice No. 20250228 dated March 3, which was later adjusted on April 2, 2025, to the sum of $463,812.54, has an unpaid balance of $463,812.54;

h. Invoice No. 20250331 dated April 3, 2025, in the sum of $519,177.14, has an unpaid balance of $519,177.14;

i.  Invoice No. 20250430 dated May 3, 2025, in the sum of $534,772.33, has an unpaid balance of $534,772.33;

j.  Invoice No. 20250531 dated June 6, 2025, in the sum of $431,306.63, has an unpaid balance of $431,306.63;

k.  Invoice No. 20250630 dated July 5, 2025, in the sum of $371,456.90, has an unpaid balance of $ 456.90;

l.  Invoice No. 20251130 dated December 2, 2025, in the sum of $396,753.80, has an unpaid balance of $17,000.71;

m. Invoice No. 20260228 dated March 4, 2026, in the sum of $377,635.71, has an unpaid balance of $377,635.71; and

n.  Invoice No. 20260331 dated April 3, 2026, in the sum of $140,463.58, has an unpaid balance of $140,463.58.

20. The outstanding balance on the above Invoices total $5,403,948.45.

21. Certain Invoices were revised or updated pursuant to the Sales Agreement and in the ordinary course of the parties' dealings to reflect corrections, adjustments, or additional charges.

22. Each original Invoice and each revised or updated Invoice was delivered to, received by, and accepted by Defendant, Cadmus, without complaint or objection.

23.     Despite receipt of the Products and Invoices without complaint or objection, and despite due demand for payment, the Defendant failed and refused, and has failed and refused, to pay the Invoices in full, as reflected above.

<u>Cadmus' Admissions of Indebtedness</u>

24.     By the first quarter of 2024, Cadmus' payment delays had materially lengthened, with some receivables extending beyond six months.

25.     By April 2025, Cadmus was providing KTJ with spreadsheets and bank-flow materials in an effort to explain Cadmus' financial difficulties.

26.     KTJ circulated a series of "Solutions for CADMUS AR" proposals on May 1, May 4, and May 8, 2025, which, among other things, required monthly payments.

27.     On or about May 8, 2025, after Cadmus' unpaid accounts receivable had continued to accumulate, KTJ proposed an accounts-receivable workout arrangement entitled "Solutions for CADMUS AR" (the "May 8 AR Plan").

28.     The May 8 AR Plan addressed Cadmus' outstanding unpaid invoices and the parties' continued business relationship. Among other things, the May 8 AR Plan recognized Cadmus' unpaid invoices through April 2025 as KTJ's accounts receivable from Cadmus, referred to as "old AR."

29.     Under the May 8 AR Plan, Cadmus was required to make specified payments in May, June, and July 2025.

30.     Beginning in July 2025, Cadmus was required to pay the prior month's invoice before the 28th day of each month as well as to make an additional monthly payment of $50,000 toward old AR.

31.     The May 8 AR Plan further set forth that KTJ will serve as a financial supervisor in its capacity as a creditor to supervise Cadmus to implement financial and operational measures intended to reduce the outstanding balance and improve transparency. These measures included monthly management meetings, financial reporting obligations, monthly bank-transaction disclosure to a KTJ-designated financial supervisor, and advance discussion with KTJ regarding certain non-ordinary-course expenditures exceeding $10,000.

32.     In exchange for Cadmus' repayment and transparency commitments, KTJ agreed to provide substantial commercial accommodations, including an additional price reduction, support for repayment of old AR through agreed offsets, and temporary relief regarding remake costs.

33.     The May 8 AR Plan expressly provided that KTJ's support was part of the overall arrangement and depended on the effective implementation of the plan. The May 8 AR Plan further provided that if Cadmus failed to implement the required payment obligations, KTJ would stop delivery.

34.     Cadmus accepted the May 8 AR Plan.

35. Relying on Cadmus' promise to perform under the May 8 AR Plan, KTJ also continued supplying products to Cadmus and continued extending commercial accommodations contemplated by the May 8 AR Plan.

36. Cadmus, however, subsequently breached the May 8 AR Plan. Among other things, Cadmus failed to remain current on all ongoing monthly bills while also reducing old AR as required.

37. Cadmus' November 2025 invoice remained partially unpaid, and Cadmus failed to pay the February 2026 and March 2026 invoices.

38. Cadmus also failed to provide financial information as required under the May 8 AR Plan.

## COUNT I
### (Breach of Contract – Sales Agreement)

39. KTJ repeats and realleges the allegations contained in paragraphs 1 through 38 above as if set forth in full herein.

40. In December 2023, the Plaintiff and Defendant entered into a written Sales Agreement pursuant to which KTJ sold dental products to the Defendant.

41. Pursuant to the Sales Agreement, Cadmus ordered the Products from KTJ.

42. KTJ shipped and delivered the Products as instructed, in a timely fashion and without incident.

43.    Cadmus received and accepted the Products without complaint or objection.

44.    Following shipment, KTJ issued invoices to Cadmus for the Products in accordance with the Sales Agreement.

45.    Cadmus breached the Sales Agreement by not paying the Invoices.

46.    By reason of its failure and refusal to pay the Invoices in full, the Defendant are in material breach of the contracts between KTJ and the Defendant.

47.    As a direct, proximate, and foreseeable result of the Defendant's breach of contract, KTJ has suffered, and continues to suffer, damages in the principal amount of $5,403,948.45, plus interest.

48.    By reason of the foregoing, KTJ is entitled to judgment against the Defendant for breach of contract in the amount of $5,403,948.45 plus interest.

## COUNT II
### (Breach of Contract - Invoices)

49.    KTJ repeats and realleges the allegations contained in paragraphs 1 through 48 above as if set forth in full herein.

50.    The Purchase Orders and Invoices together are enforceable contracts.

51.    KTJ fully performed under the Purchase Orders and Invoices by manufacturing, selling, and delivering the Products to the Defendant, as ordered.

52.     The Defendant, however, failed to perform by failing and refusing to pay the Invoices in full, despite receipt and acceptance of the Products and Invoices without complaint or objection and despite due demand for payment.

53.     By reason of its failure and refusal to pay the Invoices in full, the Defendant are in material breach of the contracts between KTJ and the Defendant, evidenced by the Purchase Orders and Invoices.

54.     As a direct, proximate, and foreseeable result of the Defendant's breach of contract, KTJ has suffered, and continues to suffer, damages in the principal amount of $5,403,948.45, plus interest.

55.     By reason of the foregoing, KTJ is entitled to judgment against the Defendant for breach of contract in the amount of $5,403,948.45 plus interest.

## <u>COUNT III</u>
### (Account Stated)

56.     KTJ repeats and realleges the allegations contained in paragraphs 1 through 48 above as if set forth in full herein.

57.     KTJ generated, issued, and delivered to the Defendant the Invoices bearing the numbers set forth in **Exhibit B**, which accurately reflect the amounts owed for the Products ordered, received, and accepted by the Defendant pursuant to and consistent with the Purchase Orders.

58.     The Defendant received, accepted, and retained the Invoices without complaint or objection.

59.     By the Defendant's receipt, acceptance, and retention of the Invoices set forth in **Exhibit B** without complaint or objection, there was an account stated between the parties with regard to the Invoices.

60.     The Invoices have not been paid in full.

61.     By reason of the foregoing, Plaintiff is entitled to judgment against the Defendant for an account stated in the principal amount of $5,403,948.45, plus interest.

## COUNT IV
**(Open Account)**

62.     KTJ repeats and realleges the allegations contained in paragraphs 1 through 48 above as if set forth in full herein.

63.     KTJ generated, issued, and delivered to the Defendant the Invoices set forth in **Exhibit B**, which accurately reflect the amounts owed for the Products ordered, received, and accepted by the Defendant pursuant to and consistent with the Purchase Orders.

64.     The amount claimed by KTJ represents the agreed upon sales price or the reasonable value of the goods delivered.

65.     By the Defendant's receipt, acceptance, and retention of the Invoices bearing the numbers set forth in **Exhibit B** without complaint or objection, there was an open account between the parties with regard to the Invoices.

66.     The Invoices have not been paid or satisfied in full.

67.     By reason of the foregoing, Plaintiff is entitled to judgment against the Defendant for open account in the principal amount of $5,403,948.45, plus interest.

## COUNT V
### (Products Sold and Delivered under Section 672.709)

68.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 48 above as if set forth in full herein.

69.     Pursuant to Florida Uniform Commercial Code Section 672.709(1)(a), Plaintiff is entitled to recover the amount of each unpaid Invoice for the Products ordered and accepted by the Defendant and sold and delivered by KTJ, at the agreed upon prices reflected in **Exhibit B**.

70.     Despite due demand, the Defendant have not made full payment on the unpaid Invoices bearing the numbers set forth in **Exhibit B**.

71.     KTJ has suffered, and continues to suffer, damages as a consequence of the Defendant's failure and refusal to pay the full balance owed for the Products.

72.     By reason of the foregoing, KTJ is entitled to judgment against the Defendant pursuant to Florida Uniform Commercial Code Section 672-709(1)(a) in the amount of $ 5,403,948.45 plus interest.

## COUNT VI
### (Under Section 672.207)

73.     KTJ repeats and realleges the allegations contained in paragraphs 1 through 48 above as if set forth in full herein.

74.     Pursuant to Florida Uniform Commercial Code Section 672.207, the conduct of, and documents exchanged between, KTJ and the Defendant recognized the existence of a valid and enforceable contract between the parties with respect to the sale of the Products for specific prices in specific quantities.

75.     KTJ fully performed under the Purchase Orders and Invoices by manufacturing, selling, and delivering the Products to the Defendant, as ordered.

76.     The Defendant, however, failed to perform by failing and refusing to pay the Invoices in full, despite receipt and acceptance of the Products and Invoices without complaint or objection and despite due demand for payment.

77.     As a direct, proximate, and foreseeable result of the Defendant's breach of contract, KTJ has suffered, and continues to suffer, damages in the principal amount of $5,403,948.45, plus interest.

78.     By reason of the foregoing, KTJ is entitled to judgment against the Defendant in the amount of $5,403,948.45, plus interest.

## COUNT VII
### (Breach of Contract Under CISG)

79.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 48 above as if set forth in full herein.

80.     The United Nations Convention on Contracts for the International Sale of Goods ("CISG") governs the parties' transactions because the contracts at issue are contracts for international sales of goods between parties whose places

of business are in different Contracting States within the meaning of Article 1 of the CISG.

81.    The seller is a Hong Kong entity, and the buyer is a U.S. entity as defined in Article 1 of the CISG.

82.    Through purchase orders, invoice terms, invoices, communications, and the parties' established courses of dealing, Plaintiff and Defendant entered binding contracts for the sale of dental products governed by CISG.

83.    Under Article 9 of the CISG, the parties were bound by the Sales Agreement they established between themselves, including their invoicing, confirmation, and payment procedures.

84.    Under Articles 30 and 33 of the CISG, KTJ performed its obligations by manufacturing, shipping, and delivering the Products ordered by Defendant in accordance with the parties' agreements and instructions.

85.    Defendant received, accepted, and retained the Products without timely objection and accepted the benefits of KTJ's performance.

86.    Under Article 53, Defendant were obligated to pay the price for the Products and to take delivery of them as required by the contracts and the CISG.

87.    Under Article 59, Defendant were required to pay the price on the date fixed by or determinable from the parties' contracts and established billing practices, without the need for any request or further formality by the Plaintiff.

88.     The payments for the Products to be made by the Defendant to Plaintiff were consideration for Plaintiffs providing the Products pursuant to the agreed upon invoices terms.

89.     Defendant breached their obligations under Articles 53 and 59 of the CISG by failing and refusing to pay the Invoices in full despite receiving and accepting the Products.

90.     Pursuant to Articles 61 and 62 of the CISG, Plaintiff is entitled to require Defendant to pay the contract price for the Products and to recover all damages resulting from Defendant's failure to perform their payment obligations.

91.     Pursuant to Article 78 of the CISG, Plaintiff is entitled to recover interest on all overdue amounts owed by Defendant from the date such amounts became due until paid.

92.     As a direct and proximate result of Defendant's breach of the CISG, KTJ has suffered damages in the principal amount of $5,403,948.45, plus interest and all other relief available under the CISG.

### COUNT VIII
**(Breach of Contract – May 8 AR Plan)**

93.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 48 above as if set forth in full herein.

94.     On or about May 8, 2025, Plaintiff KTJ and Defendant entered into the Accounts Receivable Resolution Plan (the "May 8 AR Plan"), pursuant to which

Defendant agreed, among other things, to (a) make scheduled payments toward the outstanding accounts receivable accumulated through April 2025 ("Old AR"), and (b) beginning in July 2025, timely pay invoices for ongoing and future orders while continuing to reduce the Old AR balance.

95.     In consideration of Defendant's promises and obligations under the May 8 AR Plan, KTJ agreed to provide substantial financial accommodations and concessions, including a twenty percent (20%) price reduction on products supplied to Defendant beginning in May 2025 and continuing for a period of two years. The May 8 AR Plan expressly provided that such support was part of the overall agreement and was conditioned upon the effective implementation and performance of the Plan by Defendant.

96.     Relying upon Defendant's promises of performance, KTJ continued supplying products to Defendant, extended additional credit, and applied substantial discounts to invoices issued from May 2025 through March 2026.

97.     Defendant materially breached the May 8 AR Plan by, among other things, failing to make the required payments toward the Old AR and failing to timely pay invoices for ongoing and future orders as required under the Plan.

98.     As a direct result of Defendant's breaches, KTJ was deprived of the benefit of its bargain and suffered damages, including the loss of the financial

accommodations and price concessions that KTJ provided in reliance upon Defendant's promised performance.

99.　　The discounts applied by KTJ to invoices issued between May 2025 and March 2026 in the following amounts:

    a.　Discount for Invoice No. 20250531 is $90,677.31;

    b.　Discount for Invoice No. 20250630 is $79,843.49;

    c.　Discount for Invoice No. 20250731 is $ 100,003.73;

    d.　Discount for Invoice No. 20250831 is $104,124.06;

    e.　Discount for Invoice No. 20250930 is $ 100,397.62;

    f.　Discount for Invoice No. 20251031 is $92,965.37;

    g.　Discount for Invoice No. 20251130 is $82,594.15;

    h.　Discount for Invoice No. 20251231 is $71,712.93;

    i.　Discount for Invoice No. 20260131 is $73,967.24;

    j.　Discount for Invoice No. 20260228 is $75,427.39;

    k.　Discount for Invoice No. 20260331 is $29,698.73.

100.　　The aggregate amount of discount provided by KTJ on invoices issued from May 2025 to March 2026 was approximately $901,412.02.

101.　　KTJ provided the foregoing discounts and financial accommodations solely because Defendant agreed to comply with the May 8 AR plan and satisfy

their payment obligations thereunder. The discounts constituted valuable consideration in exchange for Defendant's promised performance.

102.    Because Defendant materially breached the May 8 Plan by failing to complete payments for the outstanding balance, Defendant are not entitled to retain the benefits conferred by KTJ under that agreement. KTJ is therefore entitled to recover the value of the discounts, concessions, and other financial accommodation provided in reliance upon Defendant's promises.

103.    As a direct, proximate, and foreseeable result of the Defendant's breach of the May 8 AR Plan, KTJ has suffered, and continues to suffer, damages including but not limited to: (a) unpaid accounts receivable; (b) the value of the discounts and price concessions provided pursuant to the May 8 AR Plan; and (c) prejudgment interest, costs, and such other relief as the Court deems just and proper.

104.    As of the filing of this Complaint, KTJ's damages arising from Defendant's breach exceed $6,305,360.47, exclusive of prejudgment interest, attorneys' fees where recoverable, costs, and any additional amounts proven at trial.

**<u>RELIEF SOUGHT</u>**

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A. For counts I-VII, compensatory damages in the principal amount of $5,403,948.45;

B. For count VIII, in addition to the compensatory damages in the principal amount of $5,403,948.45 sought in Counts I-VII, an amount of $901,412.02 for a total amount of $6,305,360.47;

C. For all counts, pre-judgment and post-judgment interest in the maximum amounts allowed by law;

D. For costs, disbursements, and reasonable attorney fees; and

E. For such other and further relief as the Court deems just and proper.

WHEREFORE, Plaintiff, KTJ DENTAL LAB COMPANY LIMITED, demands judgement for damages against Defendant, CADMUS DENTAL LAB, INC, and other such relief deemed proper by the Court.

## DEMAND FOR JURY TRIAL

Plaintiff seeks a trial by jury on all issues so triable.

RESPECTFULLY submitted this 26th day of September 2026.

LITCHFIELD CAVO, LLP,

*/s/ A. Michael Perotti*

A. Michael Perotti, Esq.
Florida Bar No.: 177784

-20-

-21-

LITCHFIELD CAVO, LLP
4200 W. Cypress Street, Suite 450
Tampa, FL 33607
Ph: (813) 289-0690; Fax: (813) 289-0692
perotti@litchfieldcavo.com
adkins@litchfieldcavo.com
tampaeservice@litchfieldcavo.com
*Counsel for Plaintiff,* KTJ DENTAL LAB
COMPANY LIMITED